### In the Matter of Shirley K. COMER.

### No. 45S00–9407–DI–671.

Supreme Court of Indiana.

March 23, 1995.

Samuel L. Cappas, Lesniak & Ruff, East Chicago, for respondent.

Donald R. Lundberg, Executive Secretary, Robert C. Shook, Staff Atty., Indianapolis, for the Indiana Supreme Court Disciplinary Com'n.

### DISCIPLINARY ACTION

PER CURIAM.

This disciplinary matter is before us on a conditional agreement submitted by the respondent, Shirley K. Comer, and the Indiana Supreme Court Disciplinary Commission, pursuant to *Rule 23, Section 11(g),* of *the Indiana Rules of Admission and Discipline.* The agreement emanates from a *Verified Complaint for Disciplinary Action* filed by the Commission, charging the respondent with eight counts of professional misconduct. The respondent is a member of the Bar of this state, having been admitted in 1988, and is, thus, subject to this Court's disciplinary jurisdiction.

The parties agree to the following facts:

**Count I.** In August of 1991, a client hired the respondent to represent the client in a medical malpractice claim. The client paid the respondent $168 as a retainer. The client was injured on May 7, 1990, and the statute of limitations on this claim expired on May 7, 1992.

On June 6, 1992, some 30 days after the statute of limitations had expired, the respondent asked her client for $750 to pay for the services of a medical expert who would evaluate the claim. The respondent did not tell her client that the statute of limitations had expired. The client paid the requested funds and signed an agreement wherein the client promised to reimburse the medical expert. The respondent forwarded the retainer to the medical expert. The medical expert reported to the respondent on October 7, 1992, indicating that there was some negligence which contributed to the client's prolonged disability. Two days later, the medical expert sent a bill to the respondent for $330.00 which charge was in addition to the previously paid retainer fee.

In a letter dated March 9, 1993, the respondent informed the medical expert that the client had died and that the client's family was not going to pursue the claim. The respondent offered to satisfy the $330 bill and requested the waiver of any late charges. The client, however, was not dead. The respondent had received wrong information from a nurse on the client's hospital floor and she had failed to follow up or confirm the information.

**Count II.** In April of 1993, a married couple retained the respondent to represent them in the adoption of the wife's daughter by the husband. The clients paid the respondent $300. Thereafter, the respondent failed to communicate with them although they made many attempts to contact her. Finally, one of the clients went to the respon-

dent's office, only to find it empty, with a "for rent" sign on it. The respondent closed her office on May 29, 1993, without notifying these clients. She transferred their file to another attorney, again, without notice or their consent.

**Count III.** In April of 1993, another client employed the respondent to collect back child support. The client paid the respondent $25.00. The client attempted to contact the respondent many times, to no avail. Eventually, this client, too, went to the respondent's office and found out that she had moved. After obtaining the respondent's new telephone number from the local bar association, the client called the respondent and left many messages on her answering machine. The respondent never returned any of the calls. Around June or July of 1993, the respondent transferred this client's file to another attorney without the client's consent.

**Count IV.** In April of 1993, a client hired the respondent to represent the client in adopting his wife's child. The respondent prepared the necessary papers and sent them to the client for his signature. The client returned the signed papers together with $60.00 as filing fee requested by the respondent. By letter of May 5, 1993, the respondent asked her client to pay her a retainer fee of $300.00, and the client complied.

Thereafter, the client called the respondent several times and left telephone messages, but the respondent never returned any of his calls. The client and his wife eventually went to respondent's office and discovered that she had moved. The respondent had closed her office on May 29, 1993, and had transferred this client's file to another attorney without the client's consent.

**Count V.** In December of 1992, the respondent agreed to represent a client in a disability matter before the Social Security Administration. In a letter of May 23, 1993, the respondent informed this client that she was closing her practice but would continue to represent this client who had a hearing set for August 16, 1993, before an administrative law judge. The client appeared at the scheduled hearing on August 16, 1993, but the respondent did not, and the hearing was

continued. The client attempted to contact the respondent to obtain his file, but the respondent never again communicated with him. About August 27, 1993, the client received a letter from another attorney who informed the client that the respondent had given him the client's file. The respondent did this without notice to the client and without his consent. Later, in September of 1993, the respondent informed the administrative law judge that she was no longer representing the client.

**Count VI.** In February of 1993, a client employed the respondent to represent him in a dissolution modification. In March of that year, the respondent filed a motion for a change of judge and later participated in a status conference with the client by telephone. She did nothing further in the case and failed to notify this client when she closed her office. The client learned of respondent's move from the opposing counsel.

**Count VII.** The respondent represented a client in a personal injury claim against two defendants in the Lake Circuit Court. The court granted the respondent's client a default judgment against one of the defendants and set pretrial conference. The respondent failed to appear at the scheduled conference. On May 5, 1993, the court vacated the default and dismissed the claim subject to reinstatement upon written motion to be filed within ten days. The respondent did not inform her client that his case had been dismissed nor that a motion had to be filed in order to reinstate it.

Thereafter, the client called the respondent's office several times to find out the status of the case. The respondent did not speak with the client, but the respondent's staff advised the client that the case was proceeding and no significant events had occurred.

In a letter dated May 25, 1993, the respondent informed this client that she was closing her law practice, but that she would continue to represent this client. Finally, the client learned from the office of the clerk of the court that her case had been dismissed. The client hired another attorney who requested return of the client's file from the respon-

dent. The respondent failed to comply, and the new attorney filed a motion to compel which the court granted, ordering the respondent to return the client's file. The respondent still failed to comply, and the attorney followed up with motion for rule to show cause why the respondent should not be held in contempt of court for failing to comply with the court order. The respondent was ordered to appear on March 9, 1994. Finally, the respondent delivered the requested documents prior to the scheduled contempt hearing, and the opposition moved to cancel the hearing.

**Count VIII.** In January of 1992, a client employed the respondent to represent the client in a claim against the manufacturer of fish sticks and the supermarket that sold the fish sticks, which, the client claimed, had made her ill. The respondent wrote to the supermarket informing them that she was representing a client against them and the manufacturer. A claims representative of the manufacturer contacted the respondent and, after a telephone conference, asked her to contact him with a settlement offer. In December of 1992, the respondent answered the client's inquiry as to the status of her claim by saying it will be settled by the end of December. Later, the respondent promised to contact the claims representative with a settlement offer of $15,000, but she failed to do so.

The respondent finally made her an offer in March of 1993. However, in a letter of April 15, 1993, the claims representative informed the respondent that the manufacturer saw no causal relationship between the product and the client's illness and, thus, was unwilling to pay.

By way of mitigation, the parties agree that the respondent has had no other disciplinary sanctions since being admitted and that she was cooperative and remorseful. The respondent has not practiced law since May 27, 1993, and is currently employed in another field.

We conclude from the foregoing findings that the respondent repeatedly failed to provide competent representation and failed to act with diligence and promptness in violation of *Professional Conduct Rules 1.1 and*

*1.3.* Her repeated failure to keep her clients reasonably informed so that they could make informed decisions constitute numerous violations of *Prof.Cond.R. 1.4(a) and (b).* By failing to notify her clients that she was withdrawing from representing them, and by failing to protect their interests, the respondent repeatedly violated *Prof.Cond.R. 1.16(d).* By turning over her clients' files to other attorneys, without the clients' consent, the respondent also violated *Prof.Cond.R. 1.6(a).*

The parties agree that the appropriate sanction in this case is a suspension from the practice of law for one (1) year, without automatic reinstatement. In assessing the appropriateness of this proposed sanction, we weigh the relative seriousness of the nature of the misconduct and the extent of the pattern of neglect, incompetence and disregard for clients' interests. Also, we consider as mitigation the respondent's remorse and cooperation with the investigation. We note that the *American Bar Association Standards for Imposing Lawyer Sanctions, Standard 4.42,* provides that suspension is generally appropriate when a lawyer engages in a pattern of neglect and causes injury or potential injury to a client. The nature and extent of the misconduct established in this case indicates a similar disposition. We, thus, accept the disciplinary sanction agreed on by the parties.

It is, therefore, ordered that the respondent, Shirley K. Comer, is suspended from the practice of law for a period of one (1) year, beginning April 24, 1995, without automatic reinstatement.

Costs of this proceeding are assessed against the respondent.